# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBORAH L. SINGER, trustee under Ted Singer Declaration of Trust Dated September 1, 2011, | )<br>)<br>) |
| Plaintiff/Counter-Defendant, | ) No. 17-CV-03746 |
| v. | ) Judge John J. Tharp, Jr. |
| MASSACHUSETTS MUTUAL LIFE INSURANCE CO., | ) |
| Defendant/Counter-Plaintiff. | ) |
| ROCHELLE K. SINGER, | ) |
| Third Party Defendant/Cross-Plaintiff/Third Party Plaintiff, | ) |
| v. | ) |
| DEBORAH L. SINGER, individually and as trustee, and HOPE NOLAN, individually and as successor trustee of the Ted Singer Declaration of Trust dated September 1, 2011, | ) |
| Cross-Defendant/Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

"All happy families are alike. Each unhappy family is unhappy in its own way."[1] This case presents the unique saga of the Singer clan, divided over patriarch Theodore Singer's estate. Theodore's wife, Dr. Rochelle Singer, maintains that their daughter, Deborah Singer, manipulated

---

[1] LEO TOLSTOY, ANNA KARENINA (1878).

an ailing Theodore into diverting assets to a trust for which Deborah was the successor trustee and eventual beneficiary. Rochelle discovered the trust only after Theodore's death, and has now filed a complaint against Deborah alleging undue influence, tortious interference with inheritance expectancy, and breach of fiduciary duty. Rochelle alternatively seeks removal of Deborah as trustee and removal of another of her daughters, Hope Nolan, as successor trustee. Deborah and Nolan now move to dismiss.

## I. BACKGROUND[2]

In December 2002, Theodore Singer created the Theodore Singer Revocable Trust ("2002 Trust) and executed a will leaving the residue of his estate to that trust. Amended Cross-Complaint ("ACC") ¶ 6-7, ECF No. 52. The will named his wife, Dr. Rochelle Singer, as executor. *Id.* ¶ 8. Seven years later, Theodore suffered from health problems and was physically weak. *Id.* ¶ 12. He increasingly relied on two of his and Rochelle's daughters, Deborah Singer and Hope Nolan, for daily assistance and in conducting financial affairs. *Id.* ¶ 13. Nolan, a Certified Public Accountant, was Theodore's financial advisor and tax preparer, and Deborah assisted with Theodore's banking and finances. *Id.* ¶ 15.

In 2011, Deborah began to disparage Rochelle to Theodore, falsely criticizing Rochelle for purportedly not understanding finances, not loving Theodore, and for causing family disunity. *Id.* ¶¶ 17-18. Rochelle, in reality, loved Theodore and was competent and intelligent, holding a Ph.D. in education. *Id.* ¶¶ 18-19. Deborah convinced Theodore to take a single sum distribution of $865,000 from his Defined Benefit Plan and "roll over" the funds to an individual retirement account at Massachusetts Mutual Life Insurance Co. ("MassMutual"). *Id.* ¶¶ 21, 25. Although

---

[2] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

Rochelle's signature was required to take the single sum distribution, Rochelle was not informed of the move and her signature was forged. *Id.* ¶¶ 23-24. Deborah subsequently persuaded Theodore to use his business attorneys—rather than the estate planning attorney who prepared his earlier will—to create a second estate plan. *Id.* ¶¶ 26, 31. This estate plan created a new trust ("2011 Trust") with Deborah as successor trustee (after Theodore), Nolan as next successor trustee, and Rochelle as the beneficiary of the trust's income. *Id.* ¶¶ 26-28. Deborah and Nolan were named as the remainder beneficiaries. *Id.* ¶ 28. Deborah accompanied Theodore to the business attorneys' offices and separately corresponded with the attorneys regarding the new estate. *Id.* ¶ 29. Deborah also persuaded Theodore to direct the attorneys to draft a power of attorney in her favor in connection with the second estate, giving her power over, among other things, transactions involving real estate, personal property, and retirement plans. *Id.* ¶ 32-33.

With the 2011 Trust established, Deborah convinced Theodore to fund it. She persuaded Theodore to name the 2011 Trust as the beneficiary of his 401(k) plan, but that designation was invalid because he never obtained Rochelle's signature (forged or otherwise). *Id.* ¶¶ 36-37. Deborah also convinced Theodore to name the 2011 Trust as the beneficiary of the MassMutual IRA, which contained the $865,000 single sum distribution. *Id.* ¶ 38. Theodore died four years later, in September 2015. *Id.* ¶ 40. Rochelle did not learn of the 2011 Trust until after Theodore's death, when she became executor of his estate. *Id.* ¶ 41. Had the 2011 Trust not been designated as the beneficiary of the MassMutual IRA, the IRA would have passed to the estate. *Id.* ¶ 39.

A flurry of litigation followed. Rochelle filed two state court lawsuits against her daughters seeking to recover assets for the estate. The first lawsuit, a citation to recover assets filed in probate court, alleged that Nolan improperly transferred over $2 million in funds from Theodore's accounts to herself and her sisters in the years before Theodore's death. *See* Probate Citation, ECF

No. 54-1. The second lawsuit, filed against Deborah and Nolan, concerned the creation of the 2011 Trust and rights to the MassMutual IRA. *See* State Court Complaint, ECF. 54-2. Rochelle voluntarily dismissed the second suit on February 26, 2018. *See* Dismissal Order, ECF No. 78-1.

For her part, Deborah filed this lawsuit against MassMutual, which refused to distribute the IRA to the 2011 Trust after receiving communications from Rochelle asserting that the IRA belonged to the estate. *See* Complaint, ECF No. 1. MassMutual responded with an interpleader counterclaim naming Deborah and Rochelle, maintaining that it has no interest in the IRA and is merely holding funds for which there are competing claimants. *See* Amended Interpleader Complaint, ECF No. 32. Rochelle, now part of this lawsuit, responded by filing a cross-complaint (since amended) against Deborah ("the cross-complaint" or "ACC"), also naming Nolan as a third-party defendant. The cross-complaint alleges that Deborah is liable for undue influence and tortious interference with an inheritance expectancy concerning the MassMutual IRA. In the alternative, the cross-complaint avers that Deborah is liable for breach of fiduciary duty in her capacity as trustee of the 2011 Trust and seeks removal of Deborah and Nolan as trustee and successor trustee of the 2011 Trust. Deborah and Nolan now move to dismiss Rochelle's cross-complaint.

## II. DISCUSSION

### A. Probate Exception

The Court's first inquiry is to determine whether it has subject matter jurisdiction over the cross-complaint. Deborah posits that it does not because the cross-complaint falls within the probate exception to federal jurisdiction. Were the year 2005, she might be correct. In arguing that the Court lacks jurisdiction, Deborah relies extensively on *Storm v. Storm*, 328 F.3d 941 (7th Cir. 2003), in which the Seventh Circuit grappled with the contours of the probate exception. In *Storm,* the Seventh Circuit directed lower courts to use "a practical approach to determining the

4

boundaries of the probate exception," considering "the policy goals underlying the exception." *Id*. at 944. Those policy goals include the need "to encourage legal certainty," "promote judicial economy," and recognize the relatively greater expertise of state judges in dealing with probate issues. *Id*. Applying this framework, the court determined that the plaintiff's tortious interference with an inheritance expectancy claim fell within the probate exception. It did so because the plaintiff fundamentally sought "a legal determination that the terms of [the testator's] final will and trust . . . [were] invalid because they were allegedly procured through the exertion of undue influence." *Id*. at 945. Because "the practical effect of [the plaintiff's] lawsuit would be similar to that of a will contest," the court concluded that the plaintiff's tortious interference claim was similar enough to the probate of a will to be barred by the probate exception.

Notably, the Seventh Circuit arrived at this conclusion notwithstanding the fact that the plaintiff was challenging an *inter vivos* trust rather than a will. Pointing to its "practical approach," the court determined that the policies animating the probate exception applied as forcefully to bar the plaintiff's claim, which concerned a will substitute, as they would have to an equivalent claim concerning a will. The court declined to distinguish between wills and *inter vivos* trusts, noting that it was "loath to throw open the doors of the federal courts to disputes over testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate." *Id*. at 947-48.

The *Storm* framework, however, has given way to the clearer skies of *Marshall v. Marshall*, 547 U.S. 293 (2006). *Marshall* concerned a claim brought by Vickie Lynn Marshall (better known to the world as Anna Nicole Smith) asserting that her deceased husband's son tortiously interfered with her inheritance expectancy. In concluding that the probate exception did not bar her claim, the Supreme Court imposed a narrower and more rigid inquiry than the Seventh Circuit employed

5

in *Storm*. The Court ruled that the probate exception prohibits only efforts by federal courts to engage in "the probate or annulment of a will and the administration of a decedent's estate," or "to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311. The probate exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id*. In so doing, the Court explicitly cited *Storm* as an exemplar of when lower courts have—improperly, the opinion suggests—broadly read the probate exception "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Id*.

Courts in this district have recognized that "although the Seventh Circuit has continued, since *Marshall*, to cite the *Storm* factors, their importance appears to have diminished in the wake of *Marshall*'s more straightforward rule that the probate exception is intended to prohibit concurrent jurisdiction over a res." *In re Emerald Casino, Inc.*, 223 F. Supp. 3d 740, 749 (N.D. Ill. 2016); *see also Sarvis v. BMO Harris Bank*, No. 14 C 09143, 2015 WL 2415244, at *7 n.6 (N.D. Ill. May 19, 2015) (recognizing the tension between *Storm* and *Marshall*). It is of course up to the Seventh Circuit to determine when its precedent has been impliedly overruled, but there is no argument to be made—and certainly Deborah makes none[3]—that *Storm* authorizes a broader scope for the probate exception than does *Marshall* or even that the *Storm* factors are a *necessary* analytical overlay when applying *Marshall*'s rule. Perhaps there remain cases at the margins of even the boundaries clarified by *Marshall* in which resort to the *Storm* framework is useful and appropriate, but this is not one of them. Hewing to *Marshall*'s guidance, the central question in

---

[3] It is hardly surprising that Deborah makes no argument about the role of the *Storm* framework in the wake of *Marshall* given that her counsel failed to cite *Marshall* in her opening brief. It is difficult to imagine that the failure to do so was an oversight, but whether that is the case or not, the omission does not reflect well on counsel.

6

this case is not whether Rochelle's action "should be considered ancillary to a probate proceeding," *Storm*, 326 F.3d at 944, but simply whether Rochelle seeks to have this Court functionally "take over the administration [Theodore's] estate" or dispose of property in custody of a state probate court. *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (elucidating *Marshall*).

It is useful, in conducting this inquiry, to divide Rochelle's counts by the relief they seek. The undue influence count seeks to dissolve the 2011 Trust and direct payment of the MassMutual IRA to Rochelle. The tortious interference and breach of fiduciary duty counts, by contrast, seek compensatory damages as a result of Deborah's allegedly tortious behavior.[4] The application of the probate exception to the latter counts is therefore easy to resolve: the probate exception is no bar to federal jurisdiction because the counts seek neither modification or administration of a will nor control of a *res* in custody of the probate court. *See Marshall*, 547 U.S. at 312 (concluding that the probate exception did not apply because the testator's widow's tortious interference claim did "not involve the administration of an estate, the probate of a will, or any other purely probate matter," "alleged a widely recognized tort," sought an "*in personam* judgment" against the widow's son, and did not "seek to reach a res in the custody of a state court"); *see also Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) ("The Supreme Court held in *Marshall* that a claim of tortious interference with expectancy did not trigger the probate exception.").

Rochelle's undue influence count is slightly trickier because it seeks control over a particular *res* (the MassMutual IRA). The cross-complaint notes that if the 2011 Trust had not been named the beneficiary of the MassMutual IRA, the IRA would have passed to Theodore's estate. Rochelle's undue influence count challenges the validity of that beneficiary designation.

---

[4] The request for a trust accounting does not implicate the probate exception either. *Downey v. Keltz,* No. 11-CV-1323, 2012 WL 280716, at *3 (N.D. Ill. Jan. 31, 2012).

Rochelle, therefore, asks this Court to determine whether a specific *res* should become part of the estate. This question is within the Court's jurisdiction. The Seventh Circuit has explained—post-*Marshall*—that where "[t]he judgment sought would just add assets to the decedent's estate" and "would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate," the probate exception is inapplicable. *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008); *see also Emerald Casino*, 223 F. Supp. 3d at 746 ("Cases decided since *Marshall* suggest that claims that would add assets to an estate, but do not reallocate those assets among claimants or creditors, do not disturb a state probate court's possession of property."). True, the cross-complaint asks the Court to "direct payment of the MassMutual IRA funds to [Rochelle]." ACC ¶ 49. Assuming Rochelle is correct that the MassMutual IRA should have become part of the estate, the Court may not direct payment of the IRA directly to Rochelle, as doing so would allocate the estate's assets. But the Court may issue a judgment adding the MassMutual IRA to Theodore's estate, which would functionally provide Rochelle (who, again, is the Executor) the relief she seeks. The probate exception therefore does not bar Rochelle's undue influence claim, although it affects the relief the Court will be able to fashion should she ultimately succeed.[5]

**B.     Undue Influence and Tortious Interference**

Deborah next argues that even if the probate exception does not bar Rochelle's claims, Rochelle has nonetheless failed to state a claim for undue influence and tortious interference with an inheritance expectancy. "Undue influence . . . is any improper urgency of persuasion whereby the will of a person is over-powered and he is indeed induced to do or forbear an act which he

---

[5] Rochelle's alternative count seeking removal and substitution of Deborah and Nolan as trustee and successor trustee of the 2011 Trust is also not barred by the probate exception. Indeed, the entire premise of the count assumes that the MassMutual IRA did not become part of the estate.

8

would not do or would if left to act freely." *DeHart v. DeHart*, 2013 IL 114137, ¶ 27, 986 N.E.2d 85, 94-95 (Ill. 2013) (quoting *In re Estate of Hoover*, 155 Ill.2d 402, 411-12, 615 N.E.2d 736 (Ill. 1993)). "The influence must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another." *Id*. An undue influence inquiry is fact-specific; it "cannot be defined by fixed words and will depend on the circumstances of each case." *Id*.

Under Illinois law, a presumption of undue influence arises under certain circumstances even in the absence of evidence concerning the nature of the purported persuasion. For purposes of this case, the presumption arises "where (1) a fiduciary relationship exists between the testator and a person who receives a substantial benefit from the will, (2) the testator is the dependent and the beneficiary the dominant party, (3) the testator reposes trust and confidence in the beneficiary, and (4) the will is prepared by or its preparation procured by such beneficiary." *Id*. at 95-96. The Seventh Circuit has applied Illinois's presumptions of undue influence and fraud in federal proceedings. *See Ball v. Kotter*, 723 F.3d 813, 826-28 (7th Cir. 2013). The presumption of undue influence "create[s] a prima facie case as to the disputed issue." *Id*. at 827. If the party against whom the presumption operates "is unable to offer clear and convincing evidence to the contrary of the presumption, the prima facie case will support a finding as to the issues involved." *Id*. (internal quotation marks omitted).

At the pleading stage, the cross-complaint must "contain allegations that state a claim to relief that is plausible on its face." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In

9

reviewing the sufficiency of a complaint . . . [the Court] accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to the presumption of truth." *Id*. at 616.

The facts alleged concerning Deborah's efforts to persuade Theodore to create and fund the 2011 Trust are insufficient to permit an inference of undue influence. Overwhelmingly, the cross-complaint's allegations are boilerplate assertions that Deborah convinced or coerced Theodore to take particular courses of action. Aside from a bare contention that Deborah and Nolan threatened to withdraw their love and affection for Theodore, the cross-complaint contains no facts detailing how or when the supposed coercion occurred. The cross-complaint does posit, at several points, that Deborah lied to Theodore about Rochelle: it notes, for example, that Deborah falsely criticized Rochelle "for supposedly not understanding finances, not loving [Theodore], and causing disunity in the family." But these broad allegations, presented without further detail, fail to meet the strict contours of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to plead fraud with particularity. And at their core, the cross-complaint's allegations regarding Deborah's disparagement of Rochelle are accusations of fraud: the cross-complaint maintains that Deborah intentionally told lies to Theodore to induce him to act in a way that would benefit Deborah, and that Theodore in fact did so. These allegations therefore require particular details wholly absent from the complaint. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."). Rochelle's response brief does not meaningfully address the cross-complaint's failure to satisfy Rule 9(b)'s particularity requirement. *See* Response at 8 (distinguishing the cases cited for that proposition on the irrelevant ground that they involved the substantive law of a state other than Illinois and omitting any basis to dispute the application

of Rule 9(b), the relevant federal pleading standard, to allegations of fraud on which an undue influence claim is based).

Nor do the circumstances surrounding the creation and funding of the 2011 Trust alleged in the cross-complaint permit the Court to infer that a presumption of undue influence will arise. The first element required to establish a presumption of undue influence is a fiduciary duty between the testator and a person who receives a substantial benefit from the will. Illinois courts have explained that "substantial benefit" means a substantial benefit "compared to other persons who have an equal claim to the testator's bounty." *See DeHart,* 986 N.E.2d at 97; *In re Estate of Glogovsek*, 248 Ill. App. 3d 784, 791, 618 N.E.2d 1231, 1237 (Ill. App. Ct. 1993).[6] A child "has an equal or superior claim to that of the spouse." *DeHart*, 986 N.E.2d at 97. The cross-complaint contains no allegations permitting the inference that Deborah received a substantial benefit compared to any individual with an equal claim to the assets in Theodore's estate. The only benefit accruing to Deborah from Theodore's estate identified by the cross-complaint is the remainder of 2011 Trust, which is to be split with Nolan after Rochelle's death. While this is a substantial benefit in a vacuum, the cross-complaint provides no points of comparison from which the Court can reasonably conclude that the benefits purportedly due to Deborah are substantially greater than those due to her mother and siblings. The cross-complaint, in fact, suggests that the opposite is true: although the remainder of the 2011 Trust is split between Deborah and Nolan, Rochelle is both the beneficiary of 2011 Trust during her lifetime and the recipient of the proceeds from

---

[6] As a matter of policy, this rule is sound. It would make little sense to *presume* undue influence occurred from the creation of a will that was equitable and fair to all those with equal claims to the estate's assets. The stench of undue influence is much stronger if the resulting will wholly or overwhelmingly disinherits certain stakeholders while enriching others with equal claims. The problem with the cross-complaint, as pled, is that it contains no facts from which the Court could conclude that Deborah was to receive substantially more than others similarly situated.

Theodore's 401(k),[7] and the probate citation filed by Rochelle suggests that the estate contains (or may contain) assets worth millions of dollars wholly unrelated to the res at issue in this case. *See* Probate Citation, ECF No. 54-1. Without any allegations that Deborah is a disproportionate beneficiary of Theodore's estate, no presumption of undue influence arises. Because neither the facts surrounding Deborah's purported coercion of Theodore nor the allegations concerning the circumstances of 2011 Trust's creation can support an inference of undue influence, Rochelle's undue influence claim is dismissed.

For the same reason, Rochelle's tortious interference with an inheritance expectancy count is dismissed. This theory requires Rochelle to allege that (1) she had an inheritance expectancy; (2) Deborah intentionally interfered with that expectancy; (3) the interference involved tortious conduct; (4) there is a reasonable certainty that the devise to Rochelle would have been received but for Deborah's interference; and (5) damages. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 24, 986 N.E.2d 626, 631 (Ill. 2013). Rochelle's count fails at the third element. The only tortious conduct Rochelle identifies in her response to Deborah's motion to dismiss is Deborah's alleged undue influence on Theodore. But, as the Court just noted, Rochelle has not adequately alleged undue influence. In the absence of any proper allegations of tortious conduct, Rochelle's tortious interference claim must be dismissed.[8]

---

[7] Even if the Court infers that Theodore meant the proceeds of the 401(k) to go to the 2011 Trust instead of to Rochelle, the complaint contains no allegations concerning the value of the estate assets that went to Rochelle or any other individual with a claim equal to Deborah's.

[8] Deborah also makes two related—and unpersuasive—arguments in pushing for dismissal of Rochelle's undue influence and tortious interference claims. Deborah first argues that Rochelle has not suffered any damages due to Deborah's purported misconduct because Rochelle is the beneficiary of the 2011 Trust. Because of that, Deborah asserts, Rochelle cannot establish that her inheritance expectancy has been diminished as a result of the transfer of the MassMutual IRA funds to the 2011 Trust. But the complaint alleges that if the transfer had not occurred, the MassMutual IRA funds would have passed to the estate, and subsequently to the 2002 Trust, of which Rochelle is trustee. As trustee, Rochelle—and not Deborah—would control the size and

12

B.   **Breach of Fiduciary Duty**

In the alternative, Rochelle's cross-complaint seeks to hold Deborah liable for a breach of her fiduciary duty as trustee of the 2011 Trust. This theory also fails to support her claim. To state a cause of action for breach of a fiduciary duty, "it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 193 Ill.2d 433, 444 (Ill. 2000). Rochelle's breach of fiduciary duty count relies largely on legal conclusions devoid of factual support. The cross-complaint simply notes that Deborah, as trustee, "has refused to agree to make required minimum distributions to" Rochelle, the beneficiary of the 2011 Trust. ACC ¶ 59. According to Rochelle, the failure to make distributions "subjects the 2011 Trust to tax liability amounting to hundreds of thousands of dollars that would not otherwise be due." ACC ¶ 60. The cross-complaint, however, never describes the terms of the trust or identifies any specific funds (or the amount of funds) available to the 2011 Trust, from which Deborah could make distributions. The only potential sources of funding for the 2011 Trust identified in the cross-complaint are Ted Singer's 401(k) and the MassMutual IRA, but the complaint acknowledges that proceeds from the 401(k) have not actually been deposited in the 2011 Trust because a signed distribution authorization was never received. As for the IRA, MassMutual filed an interpleader claim indicating that it has not yet distributed the IRA funds to the 2011 Trust. The cross-complaint contains no allegations supporting the conclusion that MassMutual has, in fact, distributed the IRA proceeds to the 2011 Trust. Presumably, Deborah's obligation to make distributions to Rochelle—and the amount of

---

frequency of distributions made to herself as beneficiary. The complaint further alleges that Rochelle would have had the right to determine who would receive the MassMutual IRA funds upon her death if the funds had passed to Theodore's estate. Deborah identifies no reason why these concrete harms are insufficient to constitute damages and diminishment of expectancy.

13

those distributions—is wholly dependent on the presence of assets in the trust. But the cross-complaint makes no factual allegations concerning the existence of those assets—or of any other condition that would trigger Deborah's obligation to make distributions. Rochelle's brief does not even attempt to explain how Deborah could have made distributions from a Trust that had no assets. In essence, Rochelle's breach of fiduciary duty count, with regard to distributions, amounts to nothing more than a boilerplate assertion of the elements of the cause of action: Rochelle had a fiduciary duty to make distributions and breached that duty. This bare recitation is insufficient to satisfy the plausibility standard of *Iqbal* and *Twombly*.

Rochelle also posits that Deborah breached her fiduciary duty by failing to provide Rochelle with an accounting of the 2011 Trust. This theory fails for the same reason: the cross-complaint does not allege that there were any funds in the Trust to account for. It is true enough that Illinois law requires trustees to "at least annually . . . furnish to the beneficiaries then entitled to receive or receiving the income from the trust estate . . . a current account showing the receipts, disbursements and inventory of the trust estate." 760 ILCS 5/11(a). And the complaint alleges that despite Rochelle's repeated demands for a statutorily required accounting, Deborah has never provided one. But the complaint does not plausibly plead that there were any "receipts, disbursements, or inventory" in the Trust to account for, so it fails to adequately plead that a duty to report that information arose.

Because the cross-complaint fails to plausibly allege that the 2011 Trust ever contained any funds that Deborah could have accounted for or distributed, Rochelle's breach of fiduciary duty count is dismissed. Although the dismissal is without prejudice, Rochelle is forewarned that to sustain a breach of fiduciary duty claim against Deborah, she must be able to plead, in a manner consistent with Federal Rule of Civil Procedure 11(b), that the 2011 Trust actually contains assets

14

(*i.e.*, that MassMutual distributed the IRA funds to the 2011 Trust). Failing that, this claim should not be reasserted.

C.     **Removal/Substitution of Trustee**

Also in the alternative, Rochelle seeks removal of Deborah as trustee and Nolan as successor trustee of the 2011 Trust. As an initial matter, Nolan posits that the Court lacks supplemental jurisdiction over the count against her. 28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." "Claims form part of the same case or controversy where they derive from a common nucleus of operative fact." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014). Only a "loose factual connection between the claims" is required. *Id*. The Court need not decide whether it has supplemental jurisdiction over Rochelle's claim against Nolan because even if it did, the Court would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Section 1367(c)(4) grants district courts the discretion to "decline to exercise supplemental jurisdiction over a claim . . . if in exceptional circumstances, there are . . . compelling reasons for declining supplemental jurisdiction." In this case, the precise facts that Rochelle alleges justify removal of Nolan as successor trustee—coerced transfers of over $2 million facilitated by Nolan—are the subject of a citation to recover assets in Illinois probate court. ACC ¶ 73; Probate Citation, ECF No. 54-1. Accepting jurisdiction over Rochelle's claim here against Nolan would therefore require the Court to resolve the same factual matters currently before the probate court. Federal and state courts would be engaged in parallel proceedings concerning the same alleged acts of malfeasance, with the only difference being the remedy sought.

15

Indeed, were this case to conclude first, it could divest the probate court of the ability to determine whether the transferred assets should become part of the estate. To avoid that outcome, the Court declines to exercise supplemental jurisdiction over Rochelle's claim against Nolan.[9]

As for Rochelle's efforts to substitute herself for Deborah, "removal of a trustee is an extreme remedy, and neither the court not any party should lightly disregard the testator's choice of trustee." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 467, 898 N.E.2d 744, 753-54 (Ill. App. Ct. 2008). "Not every instance of mistake or neglect on the trustee's part requires the removal of the trustee. The court should remove a trustee only if the trustee endangers the trust fund and removal is clearly necessary to save the trust." *Id*. Personal hostility between a trustee and a beneficiary only justifies removal of the trustee where the hostilities "combine with other circumstances to render removal of the trustee essential to the interests of the beneficiary and the execution of the trust." *Id*. Circumstances sufficient to remove a trustee must be extraordinary. *Id*.

Rochelle has successfully pled only that there is animosity between her and Deborah; as previously explained, she has failed to adequately allege that Deborah engaged in tortious behavior or breached a fiduciary duty. Aside from bare conclusions about tax liability, wholly devoid of supporting facts, the cross-complaint contains no allegations suggesting that the trust property is at risk if it remains under Deborah's stewardship. Rochelle has failed to identify extraordinary circumstances that demand Deborah's removal, or any facts from which those circumstances can

---

[9] Deborah also argues that the Court should abstain from adjudicating Rochelle's entire complaint because Rochelle filed a substantially identical lawsuit in Illinois state court, which Deborah believes is the proper forum. Since briefing on this motion was completed, the Court has taken judicial notice that Rochelle voluntarily dismissed the overlapping state court case. ECF No. 79. There are, consequently, no longer grounds for abstention on the basis of parallel proceedings.

be reasonably inferred. Her count seeking to remove Deborah as trustee of the 2011 Trust is therefore dismissed.

\* \* \*

For the foregoing reasons, the motion to dismiss is granted. Rochelle's claim against Hope Nolan is dismissed without prejudice but may not be reasserted in this action. Rochelle's counts against Deborah are dismissed without prejudice.

Dated: August 15, 2018

John J. Tharp, Jr.
United States District Judge